UNITED STATES DISTRICT Court

MIDDLE DISTRICT OF LOUISIANA

| SHIRLEY WHITAKER | CIVIL ACTION |
|---|---|
| VERSUS | NUMBER 10-428-BAJ-DLD |
| FEDEX FREIGHT, INC. AND FEDEX CORPORATION | |

## RULING

This race and age-based employment discrimination and retaliation matter is before the Court on a motion for summary judgment filed by defendant FedEx Freight, Inc.[1] (rec. doc. 38). The motion is opposed by plaintiff Shirley Whitaker (rec. doc. 46).[2] The Court has jurisdiction over this matter based on federal question jurisdiction.

## Background

Plaintiff Shirley Whitaker is a 58 year-old African-American female who was employed as an at-will, full-time billing associate for defendant FedEx Freight, Inc. from 1999 until 2010, when she was terminated after accumulating what FedEx termed as excessive, unexcused absences.[3] From the time she was hired until her termination, she she worked in FedEx's Baton Rouge Service Center (BTR Service Center) and reported

---

[1] Plaintiff's amended complaint states that FedEx Corporation was improperly named and that FedEx Freight, Inc. is the proper defendant in this matter (rec. doc. 9).

[2] In connection with its motion for summary judgment, defendant filed a motion to strike several of the exhibits attached to plaintiff's memorandum in opposition to the motion for summary judgment (rec. doc. 50), which is opposed (rec. doc. 52). The motion to strike is addressed in a separate order.

[3] Plaintiff was actually hired by FedEx's predecessor company, American Freightways in 1999 (rec. doc. 1). In 2003, American Freightways was purchased by defendant FedEx Freight, Inc. (FedEx) (rec. doc. 38-1).

to BTR Service Center Manager, Chris Panks (Panks)(rec. doc. 38-3, Exhibit A -Deposition of Whitaker, pp. 51-52, 58-60).

In February 2009, FedEx instituted nationwide staffing adjustments throughout its network, and gave plaintiff the choice of either being laid off or of accepting a part-time position as a Supplemental Field Office Associate. Plaintiff did not want to lose her job and so reluctantly accepted the Supplemental Field Office Associate position, which resulted in a reduction of her hours, a reduction of her hourly wage, and an elimination of her benefits. Plaintiff, however, felt that she was being singled out because of her race and age because she was the only full-time employee to be "repositioned" and no other similarly situated employees were affected by the "staffing adjustments." On March 5, 2009, plaintiff filed an EEOC charge alleging that defendant discriminated against her based on her race and age by demoting her (rec. doc. 38-33, Exhibit A-66).

After plaintiff refused to accept a severance package and was demoted to part-time, she claims that her billing performance and attendance suddenly came under heightened scrutiny by her supervisor, Panks, despite her overall very good statistics. FedEx had a stated goal for its employees of a 99 percent rate of accuracy, and plaintiff claims her billing accuracy ranged from a rare low of 97 percent to sometimes 100 percent accuracy; yet her supervisor suddenly began to give her "corrective actions" for every slight error, regardless of its significance or statistical import in overall billing accuracy. She also complains of a sudden change in the administration of personal leave time, resulting in either leave time being used without her permission thus depleting it, or of not being able to use it for legitimate purposes, such as when she was sick. As a result of these actions, on April 24, 2009, and May 13, 2010, plaintiff filed her second and third EEOC charges

-2-

Case 3:10-cv-00428-BAJ -DLD   Document 67   09/26/12   Page 2 of 17

alleging that defendant retaliated against her for filing previous EEOC charges (rec. docs. 38-34, A-67; 38-35, A-68).

Four months later, on September 27, 2010, her supervisor, Panks, terminated her for allegedly accruing 5.5 "attendance points" (unexcused absences) over a designated period of time. At the time of her termination, she had paid personal leave time available, which could have been used with the approval of her supervisor, Panks.

Plaintiff brought suit against defendant FedEx alleging a claims for race and age-based discrimination by being demoted to Supplemental Field Office Associate and a claim for retaliation for filing EEOC charges that ultimately resulted in her termination, pursuant to Title VII of the Civil Rights Act of 1964, 42 USC §2000e, *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. 621, *et seq.* ("ADEA")(rec. doc. 1, 9, and 25).[4]

Defendant filed a motion for summary judgment seeking dismissal of all of plaintiff's claims, which was opposed, and is now before the Court.

---

[4] Plaintiff brought state law claims that were dismissed without prejudice (rec. doc. 10).
While defendant, out of an abundance of caution, seemingly assumes plaintiff made separate claims for her every factual allegation of poor treatment, specifically hostile work environment and discriminatory discharge, the Court's review of the original and amended complaints reveal no such claims but rather clearly raise claims of race and age discrimination resulting in demotion, and retaliation for filing EEOC claims resulting in termination. Insofar as a claim for *hostile work environment* is concerned, plaintiff's original complaint contains a single reference to "harassment," but does not include specific facts to show how plaintiff was subjected to unwelcome harassment, that the harassment complained of was based on race or age, or that the harassment affected a term or condition of her employment, or (for age) created an objectively intimidating, hostile, or offensive work environment. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). Without additional facts, a stray reference to "harassment" will not support a claim for hostile work environment. Additionally, plaintiff makes no reference to her "claim" for hostile work environment in her opposition memorandum. Insofar as *discriminatory discharge* is concerned, she makes no such claim.. In fact, she specifically sought leave to file her second amended complaint to assert a claim for retaliatory discharge, arguing only that she was terminated in retaliation for filing previous EEOC charges (rec. doc. 25). Any claim that plaintiff might have that she was discharged due to her race and/or age was not asserted in the complaint and, therefore, is not before the Court.

## Summary Judgment Standard

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment bears the initial responsibility of informing the district Court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco*, 76 F.3d 651 (5th Cir.1996), (citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912–13 (5th Cir.1992) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

When the moving party has carried its burden under Rule 56(c), the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed .2d 538 (1986); *see also, Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995). An issue as to a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). The non-movant's evidence is to be believed for purposes of the motion and all justifiable inferences are to be drawn in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, at 255.

Further, Fed. R. Civ. P. 56(e)(3) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the Court may ... grant summary judgment if the motion and supporting

Case 3:10-cv-00428-BAJ -DLD   Document 67   09/26/12   Page 4 of 17

materials – including the facts considered undisputed – show that the movant is entitled to it."

## Discussion

Plaintiff alleges claims of race and age-based discrimination culminating in plaintiff's demotion and a claim of retaliation for filing EEOC charges, which ultimately resulted in plaintiff's termination. Defendant moves for summary judgment seeking dismissal of all of plaintiff's claims, each of which will be addressed below.

### Demotion

Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, sex, or national origin ..." 42 U.S.C. § 2000e–2(a). Plaintiff may prove her case of race-based discrimination through direct or circumstantial evidence. *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). In this case, plaintiff offers only circumstantial evidence to establish her claim of race-based discrimination; therefore, the Court applies burden-shifting framework established in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See *Turner v. Kansas City Southern Railway Co.*, 675 F.3d 887 (5th Cir. 2012), citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); see also *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir.2000).

The first step of the *McDonnell Douglas* analysis requires "[t]he plaintiff [to] establish a *prima facie* case that the defendant made an employment decision that was motivated

-5-

Case 3:10-cv-00428-BAJ -DLD   Document 67   09/26/12   Page 5 of 17

by a protected factor."*Turner,* 675 F.3d at 892 citing *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir.1995). To establish a *prima facie* case of racial discrimination in employment, an employee must demonstrate that (1) she is a member of a protected class, (2) she was qualified for the position at issue, (3) she was the subject of an adverse employment action, and (4) she was treated less favorably because of her membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. See *Lee v. Kansas City So. Ry. Co.*, 574 F.3d 253 (5th Cir. 2009).

If the plaintiff establishes a *prima facie* case, the Court proceeds to the next stage of the analysis, where "the defendant bears the burden of producing evidence that its employment decision was based on a legitimate, non-discriminatory reason." *Turner,* 675 F.3d at 892. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 342 (2000). If the defendant carries its burden, the analysis moves to the third *McDonnell Douglas* step, where "[t]he burden ... shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination." *Turner,* 675 F.3d at 892. The plaintiff may prove pretext "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." See *Laxton v. Gap, Inc.*, 333 F.3d 572, 579 (5th Cir. 2003). On a motion for summary judgment, the plaintiff must demonstrate that an issue of material fact exists and that the legitimate reasons offered by the defendant are not its true reasons, but instead are a pretext for discrimination. *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507 (5th Cir. 2001).

-6-

Case 3:10-cv-00428-BAJ -DLD   Document 67   09/26/12   Page 6 of 17

The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age" or to "reduce the wage rate of any employee in order to comply with this chapter." See 29 U.S.C. §623(a). In order to establish a *prima facie* case of discrimination based on age under the ADEA, plaintiff must establish that: (1) she is forty or older; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) she was replaced by someone younger or treated less favorably than similarly situated younger employee. *Smith v. City of Jackson, Miss.*, 351 F.3d 183, 196 (5th Cir. 2003). Once the *prima face* case is established, the Court applies the remaining steps under the *McDonnell Douglas* burden-shifting analysis.[5] See *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374 (5th Cir. 2010).

Plaintiff alleges in her complaint that defendant discriminated against her based on her race and age by demoting her to Supplemental Field Office Associate, which resulted in a reduction of her hours and pay and an elimination of her benefits (rec. doc. 1). Defendant responds that plaintiff failed to establish her *prima facie* case of race or age discrimination or to offer evidence that defendant's proffered legitimate, non-discriminatory reason for demoting plaintiff was pretextual. Defendant states that its decision to demote plaintiff was due to a decline in business and was done pursuant to the FedEx Workforce Staffing Policy.

---

[5] The *McDonnell Douglas* burden-shifting analysis is utilized for both Title VII and ADEA claims. See *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374 (5th Cir. 2010), citing *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005) (citations omitted).

Although plaintiff does not address her claim of race or age-based discrimination based on her demotion in her opposition memorandum, much less explain how she can establish a *prima facie* case of discrimination in connection with her demotion, the Court will assume, for the sake of argument, that she could do so. Even assuming she could establish a *prima facie* case of discrimination, however, she ultimately fails to offer evidence to show that defendant's proffered reason for demoting her was merely pretext.

It is undisputed that in February 2009, FedEx made substantial staffing adjustments pursuant to its Workforce Staffing Policy (rec. doc. 42, Exhibit D, Exhibit C, C-1, FedEx's Workforce Staffing Policy). In making staffing adjustments pursuant to this policy, FedEx was required to identify the hourly job classification(s) affected and to "reposition" the employees within that job classification starting with the employee with the least amount of seniority with FedEx (rec. doc. 42, Exhibit C-1). The policy further stated that within job classifications, FedEx should reduce staff, starting with temporary and supplemental employees. Id.

At the time of the staffing adjustments, FedEx had two full-time employees working as Field Office Associates in the BTR Service Center: JoAnn Robertson and plaintiff Shirley Whitaker. FedEx also had a part-time employee working as a Supplemental Field Office Associate: Kristi Baker Richardson (plaintiff's daughter). FedEx demoted/repositioned plaintiff because she had less company seniority than Robertson, which is undisputed. FedEx also reduced by one Robertson's work hours and reduced the hours of Richardson; however, Richardson actually resigned before her hours could be affected by the staffing adjustments. It is undisputed that the 2009 staffing adjustments made by FedEx were nationwide in scope and affected approximately 900 positions in over

-8-

130 facilities throughout FedEx's network (rec. doc. 42, Exhibit D). There is no evidence that the FedEx policy was discretionary or not followed in Baton Rouge or nationwide.

The Fifth Circuit repeatedly has held that a reduction-in-force is a legitimate, non-discriminatory reason for discharge, and here plaintiff was not even discharged, but rather moved from full-time to part-time as a result of the reduction-in-force that affected FedEx nationwide. See Okon v. Harris County Hosp. Dist., 426 Fed. Appx. 312, fn.1, (5th Cir. 2001), citing EEOC v. Texas Instruments, Inc., 100 F.3d 1173, 1181 (5th Cir. 1996).

Plaintiff has failed to offer any evidence that defendant's proffered legitimate, non-discriminatory reason for demoting her was pretextual, and she has therefore failed to meet the burden of evidence required of her in order to defeat defendant's motion for summary judgment on race and age-based discrimination.[6]

Termination

Title VII makes it unlawful for an employer to retaliate against an employee who opposes any employment practice made unlawful by Title VII. See 42 U.S.C. §2000e-3(a). To make a *prima facie* case of retaliation under Title VII, plaintiff must show: (1) that she engaged in an activity protected by Title VII, (2) that her employer took an adverse employment action against her; and (3) that a causal link existed between the protected

---

[6] Plaintiff's complaint also alleges that "[p]laintiff was also discriminated against wherein she was not, *inter alia*, included in included in administrative meetings, was denied sick leave, and subjected to unreasonable scrutiny and criticism, unlike similarly situated Caucasian employees." (rec. doc. 1, ¶31). The Court views these allegations as other examples of defendant's discriminatory behavior and not separate claims of discrimination; however, the Court notes that they do not constitute "adverse employment actions" under Title VII and would not support independent claims of discrimination. The Fifth Circuit has held that adverse employment actions in the context of Title VII discrimination claims includes "only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007).

activity and the adverse action. *McCoy,* 492 F.3d 557; *Raggs v. Mississippi Power & Light Co.,* 278 F.3d 463, 471 (5th Cir. 2002).[7]

If plaintiff proves her *prima facie* case of retaliation, the burden shifts to the defendant to demonstrate a legitimate, non-retaliatory purpose for the employment action. *McCoy v. City of Shreveport,* 492 F.3d 551, 557 (5th Cir. 2007). If defendant satisfies this burden, plaintiff must prove that the employer's stated reason for the adverse action is not true but instead is a pretext for the real retaliatory purpose. *Id.*

Plaintiff alleges in her complaint that defendant retaliated against her by terminating her employment on September 27, 2009, for filing EEOC charges on March 5, 2009, alleging race and age-based discrimination in connection with her demotion, and for filing charges on April 24, 2009, and May 13, 2010, alleging retaliation for filing the previous EEOC charges.[8] Defendant does not really deny that plaintiff engaged in a protected activity (filing the EEOC complaints) or that she was terminated. Defendant disputes that plaintiff can establish a causal link between the retaliation and the termination, but places the bulk of its argument in its claim that plaintiff was fired for a legitimate, non-retaliatory reason; that is, she was fired solely because she accrued 5.5 attendance points for unexcused absences and tardies between May 2010 and September 20, 2010.[9]

---

[7] Plaintiff does not specifically indicate whether she brings her retaliation claim under Title VII or under the ADEA; however the *prima facie* elements of retaliation in an ADEA case are the same as those under Title VII. See *Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 42 (5th Cir. 1992); 29 U.S.C. §623 (d).

[8] Plaintiff's termination from employment constitutes an adverse employment action. Plaintiff identifies numerous examples of defendant's retaliatory conduct, including denial of access to administrative meetings, denial of sick/FMLA leave, unreasonable scrutiny and criticism in the form of corrective actions, denial of a pay raise, amendment of policies, and failure to share food at a cookout (rec. docs. 1 and 38-2). These are not separate claims for retaliation, but rather, examples of retaliatory conduct that are subsumed in plaintiff's ultimate claim of retaliatory discharge.

[9] Defendant offered the following summary judgment evidence in support of its legitimate, non-discriminatory and non-retaliatory reason for terminating plaintiff. On or about April 2, 2010, plaintiff was informed that her FMLA leave was going to expire on April 3, 2010, and that "any missed work will count towards the FedEx attendance policy" (rec. doc. 38-27, Exhibit A-49). Thereafter, on May 21, 2010, plaintiff had her first unexcused absence for a rolling 180-calendar-day period, for which she received one attendance

In order for plaintiff to defeat defendant's motion for summary judgment, plaintiff must first establish a *prima facie* case of retaliation. In this instance there is no dispute that she filed complaints alleging race and age-based discrimination, which are protected activities, and that she was terminated. She also must show a causal link between her filing of the complaints and her eventual termination. She then must provide evidence to show that defendant's reason for terminating her was a pretext for retaliation.[10] To accomplish this, "the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir.1999).

Here, plaintiff's proffered chronology of events is sufficient both to provide the missing link of her *prima facie* case (the causal link) and to provide evidence of pretext sufficient to defeat defendant's motion for summary judgment on the retaliation claim. Plaintiff shows, *inter alia*, increasing complaints of billing errors, regardless of how minor or of her overall billing accuracy; manipulating her paid personal leave either by depleting it without permission or not allowing it to be used for absences, including for sick leave; applying less stringent standards to other employees; and refusing to reinstate hours despite an upturn in business.

---

point (rec. doc. 38-31, Exhibit A-55). On June 21, 2010, plaintiff called in sick and received her second unexcused absence, for which she received corrective action and her second attendance point (rec. doc. 38-30, Exhibit A-52). On August 5, 2010, plaintiff received her third unexcused absence, for which she received corrective action and her third attendance point (rec. doc. 38-29, Exhibit A-51). On September 1, 2, and 3, plaintiff called in sick, and she received her fourth and fifth unexcused absences, corrective action, and her fourth and fifth attendance points (rec. doc. 38-28, Exhibit A-50). Upon receiving her fifth attendance point, plaintiff was informed that she was on a 90-day probationary period, and that any tardy or absence in the next 90 days would result in her termination from employment (Id., Exhibit A, pp. 165-166, Exhibit A-50). On September 20, 2010, plaintiff was tardy for work, resulting in 5.5 attendance points (rec. doc. 42, Exhibit B). As a result, plaintiff was discharged on September 27, 2010.

[10] This presupposes, of course, that defendant has met its burden in showing a legitimate, non-discriminatory reason for her termination, which it has. See footnote 9.

Plaintiff first offers evidence that right after she filed EEOC charges involving her supervisor's (Panks) alleged discriminatory actions, Panks noticeably increased his complaints of billing errors in the form of "corrective actions," regardless of how minor her errors or of her overall billing accuracy. It is undisputed that in 2007, defendant adopted a company standard of 99 percent in invoice billing accuracy and that plaintiff was required to meet this goal on a monthly basis. The evidence reflects that several times between December 2008 to February 2009, plaintiff received positive feedback and praise from defendant regarding her billing performance and her ability to meet the 99 percent standard (rec. doc. 46, p. 33). It likewise is undisputed that plaintiff received only five corrective actions in the form of "coaching sessions" for billing errors in 2008 (rec. doc. 38-23, A-40). This all changed, however, after she filed charges of discrimination naming her supervisor, Panks.

After plaintiff filed her March 5, 2009, and April 24, 2009, EEOC charges, however, Panks suddenly began to complain. For example, on May 15, 2009, plaintiff received a "critical written corrective action" notice for 19 different billing errors that had occurred between March 11, 2009, and May 7, 2009, for which she received a 3-day suspension. (rec. doc. 38-23, Exhibit A-40). Plaintiff testified in her deposition that during this particular time period she billed well over 2,000 bills and had only 19 errors, some of which were very minor and not of her making, which Panks grouped together to support the critical written corrective action and 3-day suspension. This corrective action also came the very next day after she refused to accept a severance package from FedEx (rec. doc. 38-3, p. 82). While it is undisputed that plaintiff received corrective actions regarding her billing performance prior to the time she filed her EEOC charges, these previous corrective actions were for

error(s) occurring on a single date and were far fewer in number (only five in 2008) (rec. doc. 38-23, A-40).

Panks also began to send e-mails about billing accuracy following her May 13, 2010, EEOC charge. Plaintiff received emails on June 11, 2010, and July 6, 2010, from Panks in which he told her she needed to improve and must self-report a corrective action plan for each error made on a daily basis. Far from showing egregious errors in accuracy to match or justify his complaints and resulting corrective action plan, however, the e-mails actually reflect plaintiff's weekly billing performance between March 12, 2010 to July 2, 2010, to have dropped slightly below 99 percent only five times (rec. docs. 46, p. 50; 42, Exhibit B-1).

Defendant's sudden, heightened criticism in the form of an unusual corrective action coupled with suspension and e-mails regarding billing accuracy so close to the time plaintiff filed her EEOC charges suggests a retaliatory motive, especially in light of the dearth of similar behavior before charges were filed.

Plaintiff also offers evidence to show that she was not returned to full-time status in retaliation for filing the EEOC charges even though business/bill counts at the center had increased. Defendant's internal human resource investigator described Panks' communication with plaintiff in connection with reducing her hours as follows:

> ... [Panks] fully explained not being able to justify the position [full-time] at this time. He also made sure that she knew that if business levels continue to increase, that he would attempt to bring her back into the full-time position at that time.

(rec. doc 46, p. 25).

It is undisputed that plaintiff made several requests to be reinstated to full-time status due to the increase in bill counts, all of which were denied. It is further undisputed that as of October 15, 2009, business levels at the center had increased. On that same

date, two FedEx human resource managers communicated via email regarding FedEx's decision to deny plaintiff's request to return to full-time status, and stated:

> [n]eedless to say, this situation is getting worse as each day passes. We had justification to reduce her to part time when freight volumes fell. Now what are we supposed to communicate to her in regards to our justification to keep her at part time?
> (rec. doc. 46, p. 29).[11]

Defendant failed to offer any explanation of its refusal to reinstate her full-time status and benefits despite the undisputed increase in business at the BTR Service Center.

Finally, plaintiff offers evidence that raises issues as to whether defendant terminated plaintiff by unfairly applying the attendance and tardy policies. Plaintiff offers evidence to show that at least two of the five of her unexcused absences, resulting in her termination, were for days when she called in sick and should have been allowed to use accrued personal paid leave.[12] While defendant provided portions of its Attendance Policy explaining the result of having unexcused absences, it did not provide the provision governing the usage of "Personal Paid Time," which is the only way a part-time employee can have an excused absence, even if sick, unless the employee has sufficient hours for FMLA leave. It is clear from the exhibits before the Court that the use of "Personal Paid Time" is considered an "Approved Absence" under the policy (rec. doc. 42, Exhibit A-9).[13] Plaintiff provided a copy of the "Personal Paid Time" policy, which provides that:

---

[11] October 15, 2009, email from Rob Leach, FedEx Division Human Resource Manager, to Chris Hamrick, FedEx Regional Human Resources Director (rec. doc. 46, p. 29).

[12] Defendant FedEx's Attendance Policy provides that "[a]bsences and tardies will be accumulated over a rolling 180-calendar-day period of active work status." (rec. doc. 38-1, Exhibit A-9). "An absence or tardy that is not approved will be considered an occurrence." Id. "One occurrence of absence will count as one attendance point. One occurrence of tardy will count as one-half of an attendance point." Id. The policy further provides that if an employee accumulates five attendance points in a rolling 180-calendar-day period, a critical written notice and 90-day probation will be administered. Id. An occurrence of any absence or tardy during the 90-day probationary period will result in discharge. Id.

[13] Defendant did provide the Court with the Approved Absence provision, which reference the Personal Paid Leave provision (rec. doc. 42, Exhibit A-9).

> FedEx Freight provides all full-time and supplemental, hourly employees in active work status with the opportunity to accrue personal paid time which may be used for illness (personal or family member) and/or as personal time. Temporary employees are not eligible (rec. doc. 46, p. 40).

Obviously, employees may not simply fail to show up for work or announce they would like to spend a day at the beach, regardless of the situation at work, and expect to be able to use their paid leave without question. The policy contains the common sense requirement that employees call in within "a reasonable time" before their scheduled start time if they are unable to be at work, either at a specific time or date, so that any necessary adjustments can be made or other employees called in to cover the work (rec. doc. 42, Exhibit A-9) . Key to this policy, however, is the word "reasonable," and the concept that an employee will be allowed time off for illness and personal time under reasonable circumstances. The policy is couched in terms of work-related concerns.

It is undisputed that plaintiff called in sick on September 1, 2, and 3, 2010, and plaintiff offers evidence that shows that she had available for use approximately 6.6 hours of personal leave at this time (rec. doc. 46, p. 43).[14] Defendant never adequately addresses why plaintiff was terminated for being sick and/or tardy while in possession of personal paid time that could have been applied to her absences. According to plaintiff, this personal paid time had been used in the past without her permission, whereas in this instance, it is

---

[14] Based on the paystub offered by plaintiff for the pay period September 12, 2010 - September 18, 2010, it is clear that plaintiff had accrued 6.6 of personal leave by September 18, 2010 (rec. doc. 46, p. 43). In light of the rate at which full-time employees accrue personal paid time (0.4615-0.6154 hours per week), plaintiff, as a part-time employee, would have had personal paid time available on September 1, 2, 3, 2010, if she had 6.6 hours only a couple of weeks later on September 18, 2010 (rec. doc. 46, p. 40). Defendant offered no evidence to the contrary.

Additionally, plaintiff offers her paystubs from July 26, 2009 - August 1, 2009; August 30, 2009 - September 5, 2009; September 27, 2009 - October 3, 2009; December 20, 2009 - December 26, 2009, each of which reflect defendant deducting paid time (rec. doc. 46, pp. 36-39). Plaintiff argues that she did not approve the use of her personal paid time during these periods and that she would have had more personal paid time at the time of her termination had defendant not used her paid time without her permission. Defendant does not address plaintiff's allegations that her personal paid time was improperly used; therefore, an issue of fact remains regarding the use and amount of plaintiff's personal paid time.

undisputed that she called in sick, yet none was applied. Defendant's decision not to use plaintiff's accrued paid personal leave time and instead to terminate her for unexcused absences is a material issue of fact which calls into question defendant's motivation in terminating her.[15] Taking plaintiff's uncontroverted evidence as true for purposes of the motion, a reasonable juror could find that defendant's proffered reason is pretext.

Defendant's application of the attendance/tardy policy is also suspect. On August 31, 2010, plaintiff requested that her start time for work be moved from 4:00 p.m. to 3:30 p.m., to allow her to clear her desk before the center got busy. Although it is unclear whether plaintiff's schedule was "formally" changed, it appears that defendant informed plaintiff that her request was approved. Plaintiff thereafter was terminated when she accumulated the last .5 of 5.5 "attendance points" as a result of a "tardy" that she received on September 20, 2010, due to an accident on the interstate (rec. doc. 38-3, pp. 169-171). There is no evidence in the record indicating what time plaintiff actually arrived at work on September 20, 2010, to show that she was actually tardy, and plaintiff's deposition testimony suggests that she might have actually clocked in at 4:00 p.m. that day. Id.

Plaintiff offers time sheet edit forms for her co-employee, JoAnn Robertson, that reflect that defendant routinely changed Robertson's time sheets to add time for various reasons and to compensate her for being tardy (rec. doc. 46, pp. 46-49, 73-88). Defendant's apparent flexibility concerning its tardy policy as applied to other employees calls into question its motivation for terminating plaintiff under the circumstances in this case. Additionally, although plaintiff does not claim that she called in to report that she was

---

[15] It is further undisputed that plaintiff met with Panks in person after her doctor's appointment on August 31, 2010 (rec. docs. 38-3, pp. 168-170; rec. doc. 42, Exhibit B). The record is unclear as to exactly what was discussed at that meeting and whether plaintiff notified Panks that she would be absent due to illness on September 1, 2, and 3, 2010, and whether plaintiff requested that her accrued personal paid leave be used to excuse her absences.

momentarily delayed by the accident, it nevertheless is undisputed that her supervisor chose to terminate her rather than apply what may have been as little as 30 minutes of her paid personal time she had available for use in just such circumstances.

In summary, plaintiff offers a chronology of events from the filing of her EEOC complaints to her ultimate termination sufficient to meet her burden of proof to establish a *prima facie* case and that defendant's proffered reason for her termination was a pretext for retaliation. As the Fifth Circuit has said, "the combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir.1999).

Accordingly,

**IT IS ORDERED** that defendant's motion for summary judgment (rec. doc. 38) is **GRANTED IN PART AND DENIED IN PART**, such that all of plaintiff's claims are dismissed, with prejudice, with the exception of plaintiff's claim that she was terminated in retaliation for filing EEOC charges.

Baton Rouge, Louisiana, September 25, 2012.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA